GUST ROSENFELD P.L.C.
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
Telephone No. 602.257.7409
Facsimile No. 602.254.4878
Séan P. O'Brien – 010540
spobrien@gustlaw.com
John A. Nasr – 029343
jnasr@gustlaw.com

*Proposed Attorneys for Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

In re:

NEW DAWN ASSISTED LIVING
OPERATING COMPANY, LLC NO. 24,

Debtor.

Case No. 2:15-bk-14558-GBN

(Chapter 11)

### MOTION TO AUTHORIZE INTERIM USE OF CASH COLLATERAL

New Dawn Assisted Living Operating Company, LLC No. 24 (the "**Debtor**"), by and through undersigned counsel, hereby move the Court, under 11 U.S.C. §§ 361, 363, and 552, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, for an Order authorizing the interim use of cash that may be claimed as cash collateral for a period of approximately 90 days.

The cash implicated by this Motion would be used, as reflected in the operating budget attached as <u>Exhibit A</u> (the "**Budget**") and incorporated by this reference, to pay the ordinary and necessary expenses of operating and maintaining the Debtor's business operations. All revenues received by the Debtor in excess of those described in the Budget will be held by the Debtor until such time as this Court authorizes, or the creditors asserting an interest in the same

JAN:jan 2500981.1 11/18/2015

agree, to their expenditure.

This Motion is supported by the following Memorandum of Points and Authorities and the *Declaration of Dennis R. Haydon in Support of the Debtor's First-Day Motions* filed concurrently with this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT FACTUAL BACKGROUND

1. On November 13, 2015, Debtor filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona (the "**Petition Date**").

2. The Debtor is operating its business and managing its assets as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. The subject matter of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M).

4. The Debtor is engaged in the business of providing skilled health care services to patients that suffer from, among other things, dementia and Alzheimer's disease.

5. The Debtor operates in Aurora, Colorado, and is owned and/or controlled by New Dawn Assisted Living Holding Company, LLC located in Arizona. Additionally, Debtor's management is in Phoenix, Arizona.

6. In order for the Debtor to continue its operations, and maintain value of its estate for the benefit of all creditors and parties-in-interest during these bankruptcy proceedings, it is necessary for the Debtor to use their cash-on-hand and the income derived from post-petition operations to pay the Debtor's ordinary and necessary operating expenses.

7. The Debtor's aggregate projected income (the "**Income**") and expenses (the "**Expenses**") for the next 90 days are identified in the Budget.

8. Upon information and belief, the Debtor believes that Sabra Healthcare

Holdings III, LLC ("**Sabra**") may assert a security interest in the Debtor's cash, inventory, and accounts receivable, and contend that the Income constitutes "cash collateral" as defined in 11 U.S.C. § 363.

9. The Debtor has not had sufficient time to determine the validity, priority, enforceability, or extent of any lien asserted by Sabra (or other parties that may assert an interest in the Debtor's property that could constitute cash collateral), and expressly reserves their right to contest any such lien or otherwise object to any such claims.

10. The Debtor proposes to use the Income to pay the Expenses in accordance with the Budget, as supplemented by a 10% permissible variance on the total Budget.

11. It is crucial for the Debtor to have the use of the Income to operate and maintain its business operations in order to protect the safety, health, and well-being of its patients, but also to preserve its going-concern value while the Debtor formulates and implements a plan of reorganization.

12. The Debtor believes that its business operations and reorganization efforts would suffer immediate and irreparable harm if they are not allowed to use the Income to pay the Expenses.

13. The Debtor submits that any purported interests in the Income are adequately protected by the value generated through the Debtor's continued operations, and request that the Court enter an Order authorizing the use of the Debtor's Income to pay the Expenses, *effective nunc pro tunc*, and as reflected in the Budget, without delay.

## II. LEGAL ARGUMENT

### A. Sabra's Interest in the Debtor's Income is Adequately Protected.

Under Section 363(c)(2) of the Bankruptcy Code, the use of cash collateral is permitted only upon consent of the party claiming an interest in the cash collateral, or with court authority after notice and a hearing. Section 363(e) of the Code conditions the use of cash collateral on

the provision, where necessary, of adequate protection. Such adequate protection must be furnished only to the extent necessary to protect a secured creditor against use of collateral that would decrease the value of such creditor's interest in its collateral. 11 U.S.C. § 361; see *United Savs. Ass'n Timbers of Inwood Forest Ass'n Ltd.* 484 U.S. 365, 369-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" that secures such claim). The measure of adequate protection to which a given secured creditor may be entitled should be determined through a case-by case analysis, and with the goal of allowing the debtor maximum flexibility in affording such adequate protection. *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985). Courts have been understandably reluctant to forbid the reasonable and well-controlled use of cash collateral in realization of the death knell that such a restriction may represent for a debtor's prospects at reorganization. *See In re Franklin Pembroke Venture II*, 105 B.R. 276, 277-78 (Bankr. E.D.Pa. 1989); *In re Stein*, 19 B.R. 458, 459 (Bankr. Pa., 1982)("[T]he purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary in order to operate a business.").

      B.    <u>Sabra's Interest in the Debtor's Income is Adequately Protected by the Preservation of the Going-Concern Value of the Debtor's Business.</u>

If the Court denied the Debtor's use of cash collateral, it would, without a doubt, cripple the Debtor's prospects of a successful reorganization, and place the health, safety, and well-being of hospice patients suffering from Alzheimer's and/or dementia in peril. The Debtor simply cannot reorganize without the ability to use cash collateral. And even if Sabra (or another party) refused to consent to the Debtor's use of cash collateral, such actions would be akin to cutting off your nose to spite your face. The only way to immediately protect Sabra's interest, and interests of other creditors, is to allow the Debtor to continue its operations as a going concern.

Courts have acknowledged this principle in holding that the maintenance of a

JAN:jan 2500981.1 11/18/2015

company's going-concern value may attribute to a creditor's security. *See In re Erie Hilton Joint Venture*, 125 B.R. 140, 149 (Bankr. W.D. Pa. 1991) ("[p]reservation of the goingconcern value of the business can constitute a benefit to the secured creditor."); *see also In re Princeton Square Assocs.*, 201 B.R. 90, 96 (Bankr. S.D.N.Y. 1996) ("[T]his court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."). Simply put, the going concern value of the Debtor's business is the only manner in which any of the creditors in this case will be protected, and the use of the Income to preserve that value satisfies the requirements of Section 361 of the Bankruptcy Code.

Finally, as further protection, the Debtor is willing to grant Sabra a replacement lien on their respective collateral, to the extent of any post-petition diminution in that collateral, with the same validity and priority as held on the Petition Date. A replacement lien is, of course, a common and accepted method of providing adequate protection to a secured creditor. *See* e.g. *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. N.D. Fla. 1997); *In re Barkley 3A Investors, Ltd.*, 175 B.R. 755, 759 (Bankr. Kan. 1994).

### III. CONCLUSION

The Debtor must have the use of its cash-on-hand and post-petition revenues in order to maintain its operations, and work towards a successful reorganization. The Debtor submits that Sabra is adequately protected for the reasons set forth above, and because the Debtor is willing to grant Sabra a replacement lien with the same validity and priority as held on the Petition Date to the extent of any diminution in the value of such collateral.

Based upon the foregoing, the Debtor respectfully requests that the Court enter an Order:

A. Deeming that any interest held by Sabra or another party in interest in the

1  Debtor's cash collateral is adequately protected;

2       B.    Authorizing the interim use of all of the Debtor's Income, in accordance with
3  the Budget, as augmented by a 10% total variance, *nunc pro tunc* and through and including
4  February 15, 2016; and

5       C.    Awarding the Debtor such further relief as the Court deems appropriate.

6  DATED this 18th day of November, 2015.

**Gust Rosenfeld P.L.C.**

By: /s/ *John A. Nasr – 029343*
Séan P. O'Brien
John A. Nasr

*Proposed Attorneys for Debtor*

Copy of the foregoing mailed
this 18th day of November, 2015 to:

U.S. Trustee's Office
230 North 1st Avenue, Suite 204
Phoenix, Arizona 85003

By: /s/ *Linda Schrieber*

JAN:jan 2500981.1  11/18/2015

# EXHIBIT A

## NEW DAWN ASSISTED LIVING AURORA
## BUDGET
## NOVEMBER 2015 - JANUARY 2016

| Resident Ramp-up | Nov-15 | Dec-15 | Jan-15 |
|---|---|---|---|
|  | 43 | 43 | 43 |
| **Revenue:** | | | |
| Resident Rents (ADR 243) | 271,674 | 271,674 | 271,674 |
| Resident Reimbursements | 1,966 | 1,966 | 1,966 |
| Furniture Fee | | | |
| Community Fees | 2,950 | 2,950 | 2,950 |
| **TOTAL REVENUE** | 276,590 | 276,590 | 276,590 |
| **Expenses:** | | | |
| Salaries and Taxes | 123,900 | 123,900 | 123,900 |
| Benefits | 14,000 | 14,000 | 14,000 |
| Wellness Department | | | |
| *Wellness Supplies* | 300 | 300 | 300 |
| Incontinent Supplies | 1,966 | 1,966 | 1,966 |
| TB Test | 65 | | 65 |
| House Stock | | 111 | |
| QuickMar | 165 | 165 | 165 |
| Medical Director | 250 | 250 | 250 |
| Shredding | | | |
| Waste Removal | | 67 | 46 |
| Payroll Processing | 1,350 | 1,350 | 1,350 |
| Bank Service Charges | 25 | 25 | 25 |
| License and Permits | | | |
| Dept of Health License | | | |
| Business License | | | |
| Postage and Delivery | 215 | 215 | 215 |

| | | | |
|---|---|---|---|
| Dining Services | | 9,030 | 9,331 | 9,331 |
| | Groceries | | | 125 |
| | Smallware Replacement | 125 | | 325 |
| | Hood Cleaning | | 875 | 875 |
| | Linen | 875 | 125 | 125 |
| | Paper Products | 125 | | 225 |
| | GreaseTrap | | | |
| | Dietician | 250 | | |
| Cleaning Supplies | | 1,600 | 1,600 | 1,600 |
| Activity Department | | | | |
| | IN2L Software | 750 | 750 | 750 |
| | Entertainment | 250 | 250 | 250 |
| | Supplies | 75 | 75 | 75 |
| | Food/Events | 350 | 750 | 100 |
| Advertising/Marketing | | | | |
| | Collateral | 100 | 100 | 100 |
| | Lead Management System | 129 | 129 | 129 |
| | Special Events | 150 | | |
| | Food/Catering | 75 | 75 | 75 |
| Software Subscription | | | | |
| | Office 365/Email | 280 | 280 | 280 |
| | Real Page Subscription | 600 | 600 | 600 |
| Education/Employee Training | | 75 | 75 | 75 |
| Registry and Recruiting | | 250 | 250 | 250 |
| Employee | | | | |
| | Employee Checks | 100 | 100 | 100 |
| | Uniforms/Nametags | 450 | | |
| | Relias/CARES Training | | | |
| Equipment Rental | | 970 | 970 | 970 |

| | | | |
|---|---:|---:|---:|
| Insurance | 5,983 | 5,983 | 5,983 |
| Professional Fees-IT | 1,800 | 1,800 | 1,200 |
| Repairs & Maintenance | | | |
| Fire Inspections | | | 1,091 |
| Fire Monitoring | 31 | 31 | 31 |
| Landscaping | | | |
| Snow Removal | 300 | 300 | 300 |
| Alarm Detection Monitoring | 975 | 975 | 975 |
| *Misc. Repairs* | 1,000 | 1,000 | 1,000 |
| Room Turnover | 350 | 350 | 350 |
| Generator Inspection | | | |
| Supplies/Tools | 300 | 300 | 300 |
| Backflow Testing | | | |
| *Office Supplies* | 300 | 300 | 300 |
| Momentum | 8,200 | 1,000 | |
| Pest Control | 225 | 225 | 225 |
| Taxes | - | - | - |
| *Referral Fees* | 5,000 | | 5,000 |
| Trash Removal | 350 | 350 | 350 |
| Telephone | 2,378 | 2,378 | 2,378 |
| Travel | 500 | 500 | 500 |
| Utilities | 7,000 | 7,000 | 7,000 |
| Management Fees | 16,595 | 16,595 | 16,595 |
| **TOTAL EXPENSES** | 210,133 | 197,772 | 202,221 |
| **Debt Service** | 66,457 | 78,818 | 74,369 |
| **PROFIT/(LOSS) before** | | | |
| Sabra Rent Deferment | | | 15,931 |
| Sale/Lease back | 113,162 | 113,162 | 113,162 |
| **PROFIT/(LOSS)** | (46,705) | (34,344) | (54,724) |

*\*Italics show variable line items*