Richard M. Lorenzen (#006787)
RLorenzen@perkinscoie.com
Bradley A. Cosman (#026223)
BCosman@perkinscoie.com
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000

Jennifer Salisbury (CO Bar #37168)
*Pro Hac Vice Pending*
MARKUS WILLIAMS YOUNG &
ZIMMERMAN LLC
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
jsalisbury@markuswilliams.com

Attorneys for *Sabra Health Care Holdings III, LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>New Dawn Assisted Living Operating Company, LLC No. 24,<br><br>               Debtor. | Chapter 11<br><br>Case No. 2:15-bk-14558-DPC<br><br>**LIMITED OBJECTION TO MOTION TO AUTHORIZE INTERIM USE OF CASH COLLATERAL**<br><br>Hearing Date: November 20, 2015<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 603<br>             230 N. 1st Avenue<br>             Phoenix, AZ |

Sabra Health Care Holdings III, LLC ("**Sabra**") hereby objects to the *Debtor's Motion to Authorize Interim Use of Cash Collateral* ("**Cash Collateral Motion**") [Dkt. No. 10] and in support hereof states as follows:

1. On or about November 13, 2015 (the "**Petition Date**"), New Dawn Assisted Living Operating Company, LLC No. 24 ("**Debtor**") filed its voluntary petition under chapter 11 of the United States Bankruptcy Code.

2. Debtor is operating its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

3. Debtor leases and operates an assisted living facility in Aurora, Colorado. Sabra is the owner and lessor of the Aurora, Colorado facility ("**Aurora Facility**"). Prior to the Petition Date, Sabra, as landlord, and Debtor, as tenant, were parties to a lease dated September 20, 2012, attached to this Objection as <u>Exhibit A</u>.

4. Pursuant to the Lease, Debtor granted to Sabra a security interest and express contractual lien upon all of Debtor's right, title and interest in (among other things) all of Debtor's personal property, accounts, and proceeds thereto.

5. Sabra's security interest has been properly perfected through its filing of a UCC in Nevada.

6. Prior to filing its Petition, Debtor was in default under the Lease for failing to make its lease payments to Sabra for the months of September, October and November.

7. On November 18, 2015, Debtors filed the Cash Collateral Motion. The Cash Collateral Motion incorporated a three month budget running through February 15, 2016 (the "**Budget**"). According to the Budget, the Debtor is operating at a loss and does not have sufficient funds to pay its regular operating expenses and its monthly obligations under the Lease. Indeed, according to the Budget, the Debtor does not anticipate making its monthly lease payments during the next three months.

8. Under 11 U.S.C. § 363(c)(2), a party with an interest in cash collateral may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents, or if the court, after notice and hearing, authorizes such use, sale, or lease.

9. If the Court grants the use of cash collateral, an entity with an interest in property which is used by a debtor-in-possession is entitled to adequate protection of such interest.

11 U.S.C. § 363(e). Therefore, the key consideration for a court evaluating a debtor's proposed use of cash collateral is the existence of adequate protection for a creditor's security interest in that cash collateral. *In re Gallegos Research Group*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995).

10. Specifically, "adequate protection means that the value of the creditor's interest in the collateral must be protected from diminution while the property is being used or retained in the bankruptcy case." *Id.* Secured creditors are afforded adequate protection as a matter of right. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) ("At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to [Section 363(e)] for protection."). It is the debtor-in-possession who carries the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1).

11. Sabra recognizes the need for a debtor to utilize cash collateral to preserve and maintain the estate. However, Sabra is entitled to appropriate adequate protection of its interests and it does not consent to the use of cash collateral under the circumstances proposed by the Debtor. Sabra objects on the grounds that the motion does not provide for adequate protection of Sabra's interests.

12. Moreover, Sabra objects to the Budget as it does not provide assurances of payment of the Debtor's obligations under the Lease. Section 365(d) of the Bankruptcy Code states that Debtors "must timely perform all obligations of Debtor arising from and after the order for relief under any expired lease of nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3). Courts routinely hold that a landlord is entitled to immediate payment of post-petition, pre-rejection rent pursuant to Section 365. *In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 69-70 (BAP 10th Cir. 2002); *In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003). In other words, the Bankruptcy Code does not permit the Debtor to continue operating its business by utilizing cash "saved" by delaying and deferring payments on its Lease, particularly in this instance when such cash constitutes Sabra's cash collateral.

13. Based upon the Budget, the Debtor is not generating sufficient income to meet its ordinary business expenses. Although it is very early in this case, the Budget begs the following questions: How is the Debtor going to fund its significant operating deficiency? How is the Debtor going to make the requisite lease payments during the course of its bankruptcy? How much cash did the Debtor have on the Petition Date? How is the health, safety and welfare of the residents at the Debtor's assisted living facility being protected when the Debtor is operating at a loss?

14. Sabra also objects to the Budget as it contemplates the payment of the Debtor's management company because the management agreement and the fees payable thereunder are subject to a subordination to the rights and privileges of Sabra under the Lease and may not be paid during any default under the Lease.

15. Finally, Sabra objects to a 90-day interim cash collateral order. Sabra requests that any order entered only provide the Debtor with authorization to use Cash Collateral for 30 days and only provide for payment of expenses that are absolutely necessary for the maintenance of the Debtor's business during the interim period in order to minimize the projected operating deficiency.

16. Sabra requests that the Court condition any interim authorization for the Debtor to use Cash Collateral by providing Sabra with a nine-month budget and the following adequate protection (at a minimum):

- Requiring the Debtor to make timely payments in full under the Lease;

- Granting Sabra post-petition replacement liens in accounts receivable and accounts, including cash collateral generated or received by the Debtor subsequent to the date of the filing of the petitions. The replacement liens shall be equal to the aggregate amount of the Cash Collateral used by the Debtors and the aggregate diminution, if any, after the date of the filing of the petition of Sabra's Cash Collateral, whether by depreciation, use, sale, loss, decline in market price or otherwise.

4

Case 2:15-bk-14558-DPC    Doc 25    Filed 11/19/15    Entered 11/19/15 18:00:34    Desc
Main Document    Page 4 of 6

- Granting Sabra a super-priority administrative claim under 11 U.S.C. § 507(b) to the extent of any diminution in value of Sabra's Cash Collateral.

- Requiring the Debtor to provide Sabra with weekly financial and budget reconciliation reports and information delineating cash receipts and expenditures.

17. Sabra expressly reserves all rights to supplement this Objection.

For the foregoing reasons, Sabra does not consent to the use of cash collateral on the terms set forth in the Cash Collateral Motion, but will consent to the entry of a limited order permitting the use of cash collateral on an interim basis on the terms set forth above, and for such other and further relief as the Court deems proper.

Dated: November 19, 2015

**PERKINS COIE LLP**

By: */s/ Richard M. Lorenzen*
Richard M. Lorenzen (#006787)
RLorenzen@perkinscoie.com
Bradley A. Cosman (#026223)
BCosman@perkinscoie.com
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

–and–

Jennifer Salisbury (CO Bar #37168)
MARKUS WILLIAMS YOUNG &
ZIMMERMAN LLC
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
jsalisbury@markuswilliams.com

Attorneys for Sabra Health Care Holdings III, LLC

ORIGINAL electronically filed and COPY served on November 19, 2015 via E-mail and via the Court's ECF Noticing System to:

JOHN A NASR
GUST ROSENFELD PLC
ONE E WASHINGTON #1600
PHOENIX, AZ 85004
602-257-7986
Fax : 602-254-4878
Email: jnasr@gustlaw.com

PATTY CHAN
OFFICE OF THE UNITED STATES TRUSTEE
230 N. FIRST AVE., #204
PHOENIX, AZ 85003
602-682-2633
Fax : 602-514-7270
Email: patty.chan@usdoj.gov

SEAN P. O'BRIEN
GUST ROSENFELD P.L.C.
One East Washington Suite 1600
PHOENIX, AZ 85004-2553
602-257-7460
Fax : 602-254-4878
Email: spobrien@gustlaw.com

JENNIFER A. GIAIMO
OFFICE OF THE U.S. TRUSTEE
230 N. FIRST AVE., #204
PHOENIX, AZ 85003-1706
602-682-2600
Email: Jennifer.A.Giaimo@usdoj.gov

*/s/ Kathryn Hardy*

128717699.1

Case 2:15-bk-14558-DPC    Doc 25    Filed 11/19/15    Entered 11/19/15 18:00:34    Desc
Main Document    Page 6 of 6